## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOEL ROSENFELD, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| AETNA, INC., MARK T. BERTOLINI, FERNANDO AGUIRRE, FRANK M. CLARK, BETSY Z. COHEN, MOLLY J. COYE, ROGER N. FARAH, JEFFREY E. GARTEN, ELLEN M. HANCOCK, RICHARD J. HARRINGTON, EDWARD J. LUDWIG, JOSEPH P. NEWHOUSE, and OLYMPIA J. SNOWE, | ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff Joel Rosenfeld ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Aetna, Inc. ("Aetna" or the "Company") against Aetna and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9,

1

17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction pursuant to which Aetna will be acquired by CVS Health Corporation ("CVS Health") through its wholly owned subsidiary, Hudson Merger Sub Corp. ("Merger Sub") (the "Proposed Transaction").

2.      On December 3, 2017, Aetna entered into an Agreement and Plan of Merger (the "Merger Agreement") with CVS Health.  Pursuant to the terms of the Merger Agreement, Aetna stockholders will receive $145.00 in cash and 0.8378 of a share of CVS Health common stock for each Aetna common share held, representing approximately $207 per share of Aetna (the "Merger Consideration").  The Proposed Transaction is valued at approximately $69 billion.

3.      On January 4, 2018, CVS Health filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC in connection with the Proposed Transaction.  The Registration Statement, which recommends that Aetna stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Aetna and CVS Health's financial projections, relied upon by Aetna's financial advisors, Lazard Frères & Co. LLC ("Lazard") and Allen & Company LLC ("Allen"), in their financial analyses; and (ii) the valuation analyses prepared by Lazard and Allen in connection with the rendering of their fairness opinions.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as Aetna stockholders need such information to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, Aetna's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Aetna is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Aetna.

9.     Aetna is a Pennsylvania corporation and maintains its principal executive offices at 151 Farmington Avenue, Hartford, CT 06156.  Aetna is a health care benefits company, serving approximately 46.7 million people.  The Company's common stock is traded on the New

York Stock Exchange under the ticker symbol "AET."

10.     Defendant Mark T. Bertolini ("Bertolini") has served as Chief Executive Officer ("CEO") of the Company since November 2010 and Chairman of the Board since April 2011. Defendant Bertolini previously served as President of the Company from July 2007 to December 2014.

11.     Defendant Fernando Aguirre ("Aguirre") has served as a director of Aetna since 2011.

12.     Defendant Frank M. Clark ("Clark") has served as a director of Aetna since 2006.

13.     Defendant Betsy Z. Cohen ("Cohen") has served as a director of Aetna or its predecessors since 1994.

14.     Defendant Molly J. Coye ("Coye") has served as a director of Aetna since 2005.

15.     Defendant Roger N. Farah ("Farah") has served as a director of Aetna since 2007.

16.     Defendant Jeffrey E. Garten ("Garten") has served as a director of Aetna since 2000.

17.     Defendant Ellen M. Hancock ("Hancock") has served as a director of Aetna since 1995.

18.     Defendant Richard J. Harrington ("Harrington") has served as a director of Aetna since 2008.

19.     Defendant Edward J. Ludwig ("Ludwig") has served as a director of Aetna since 2003.

20.     Defendant Joseph P. Newhouse ("Newhouse") has served as a director of Aetna since 2001.

21.     Defendant Olympia J. Snowe ("Snowe") has served as a director of Aetna since

4

2014.

22.     Defendants referenced in paragraphs 10 to 21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

23.     CVS Health is a Delaware corporation with its principal executive offices located at One CVS Drive, Woonsocket, Rhode Island, 02895.  CVS Health's common stock is traded on the New York Stock Exchange under the ticker symbol "CVS."

24.     Merger Sub is a Pennsylvania corporation, a wholly-owned subsidiary of CVS Health.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Aetna common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of December 3, 2017, there were approximately 326,172,331 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by Aetna or

its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.   Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

32.     Aetna is a leading diversified health care benefits company, serving approximately 46.7 million people.  The Company offers a broad range of traditional, voluntary and consumer-directed health insurance products and related services, including medical, pharmacy, dental, behavioral health, group life and disability plans, and medical management capabilities, among others.  The Company derives its revenues primarily from insurance premiums, administrative service fees, net investment income and other revenue.

33.     Aetna's operations are conducted in three business segments: health care, group insurance, and large case pensions.  The health care segment consists of medical, pharmacy benefit management services, dental, behavioral health and vision plans offered on both an insured basis and an employer-funded basis.  The group insurance segment primarily includes group life insurance and group disability products.  Large case pensions manages a variety of retirement products primarily for tax-qualified pension plans, which in turn provide a variety of funding and benefit payment distribution options and other services.

34.     On August 3, 2017, the Company announced its second quarter of 2017 financial results.  For the quarter, Aetna reported net income of $1.2 billion, compared to $791 million in the second quarter of 2016.  Adjusted earnings were $1.1 billion, compared to $783 million in the second quarter of 2016.  Defendant Bertolini commented on the quarter's financial results, stating, "[o]ur strong second quarter results speak to our continued focus on disciplined pricing and execution of our targeted growth strategy. . . . Based on our continued outperformance, we are once again increasing our full-year 2017 earnings projections."   Shawn M. Guertin ("Guertin"), Aetna's executive vice president and Chief Financial Officer ("CFO"), also noted,

"[o]ur core businesses continued to outperform during the second quarter, carrying forward positive momentum from the start of the year. . . . Additional 2017 earnings power allows us to improve our full-year outlook while also accelerating our timeline for targeted investments in growth initiatives."

35.     On October 31, 2017, the Company issued a press release announcing its third quarter of 2017 financial results.  For the quarter, net income was $838 million, compared to $604 million in the third quarter of 2016.  Adjusted earnings were $814 million, compared to $734 million in the third quarter of 2016.  Commenting on the quarter's favorable financial results, defendant Bertolini stated:

> Our third-quarter results are a continuation of our momentum from the first half of the year. . . . Our tireless focus on service and quality are evident in the recently released 2018 Medicare Star Ratings. For the third year in a row Aetna has the leading position among publicly-traded companies with the highest percentage of members in plans rated four stars or higher.

Guertin also stated, "[w]e are once again increasing our full year 2017 earnings projections to reflect the continued strength of our operating results year to date."

**The Sale Process**

36.     Since 2010, Aetna and CVS Health have been party to a long-term agreement pursuant to which CVS Health provides certain pharmacy benefit management services to Aetna and certain of its customers and members.  Throughout the term of this agreement, members of senior management of each company, including defendant Bertolini and Larry J. Merlo ("Merlo"), President and CEO of CVS Health, have discussed, among other things, the companies' relationship and opportunities to partner.

37.     Throughout May 2017, members of Aetna management had several conversations and meetings with members of CVS Health management and two other retail and health care industry participants, referred to in the Registration Statement as "Party X" and "Party Y," regarding potential strategic partnerships, joint ventures and other opportunities.

38.     On June 14, 2017, the Company entered into a non-disclosure agreement with Party X.

39.     From June through September 2017, Aetna continued to meet with CVS Health, Party X and Party Y.

40.     On October 11, 2017, defendant Bertolini received a letter from Merlo containing an indication of interest from CVS Health to acquire Aetna for $195.00 per share, consisting of approximately 55% in cash and 45% in CVS Health common stock.  The letter indicated that CVS Health would be open to discussing representation for Aetna's directors on the board of directors of the combined company and that CVS Health expected there to be a significant opportunity for Aetna management to be part of the combined company.

41.     On October 18, 2017, Aetna and Party Y entered into a non-disclosure agreement.

42.     Throughout November 2017, members of Company management and of CVS Health continued to negotiate terms of a potential business combination.

43.     On November 29, 2017, CVS Health's Executive Vice President and CFO David M. Denton ("Denton") made a revised proposal to defendant Guertin for $207.00 per Aetna common share, consisting of $145.00 in cash and $62.00 in CVS Health common stock.  The next day, the parties discussed, and ultimately agreed to, an exchange ratio of 0.8378 shares of CVS Health common stock per Aetna common share.

44.    On December 3, 2017, each of Lazard and Allen rendered their fairness opinions and the Board approved the Merger Agreement.  That evening, Aetna and CVS Health executed the Merger Agreement.

**The Proposed Transaction**

45.    On December 3, 2017, Aetna and CVS Health issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

> WOONSOCKET, RI and HARTFORD, CT – CVS Health (NYSE: CVS), a company at the forefront of changing the health care landscape, and Aetna (NYSE: AET), one of the nation's leading diversified health care benefits companies, today announced the execution of a definitive merger agreement under which CVS Health will acquire all outstanding shares of Aetna for a combination of cash and stock.  Under the terms of the merger agreement, which has been unanimously approved today by the boards of directors of each company, Aetna shareholders will receive $145.00 per share in cash and 0.8378 CVS Health shares for each Aetna share.  The transaction values Aetna at approximately $207 per share or approximately $69 billion[1]. Including the assumption of Aetna's debt, the total value of the transaction is $77 billion.

> This transaction fills an unmet need in the current health care system and presents a unique opportunity to redefine access to high-quality care in lower cost, local settings—whether in the community, at home, or through digital tools.

> CVS Health President and Chief Executive Officer Larry J. Merlo said, "This combination brings together the expertise of two great companies to remake the consumer health care experience. With the analytics of Aetna and CVS Health's human touch, we will create a health care platform built around individuals. We look forward to working with the talented people at Aetna to position the combined company as America's front door to quality health care, integrating more closely the work of doctors, pharmacists, other health care professionals and health benefits companies to create a platform that is easier to use and less expensive for consumers."

> This is a natural evolution for both companies as they seek to put the consumer at the center of health care delivery. CVS Health has steadily become an integrated health care company, and Aetna has moved beyond being a traditional insurer to focus more on consumer well-being.

10

"This is the next step in our journey, positioning the combined company to dramatically further empower consumers. Together with CVS Health, we will better understand our members' health goals, guide them through the health care system and help them achieve their best health," said Mark T. Bertolini, Aetna chairman and CEO. "Aetna has a proud tradition of continually innovating to address unmet consumer needs and providing leading products and services to the marketplace."

Bertolini continued, "Aetna has a talented and dedicated group of employees working to build a healthier world every day. Our combined company will be more competitive in the marketplace and accelerate progress toward achieving this mission."

Today, increasing numbers of consumers are taking on more and more responsibility for paying for their health care as the burden of costs is being shifted to them. Together, CVS Health and Aetna will be a trusted community partner who will help consumers better manage the cost of the health care they need. The combined company will also be well positioned to more effectively meet the health needs of many more people, especially the 50 percent of Americans with chronic conditions that account for more than 80 percent of all health care costs. Finally, capabilities developed following this transaction will directly benefit clients of both companies and enable them to better manage their health care costs.

* * *

**Transaction Terms**

Under the terms of the merger agreement, each outstanding share of Aetna common stock will be exchanged for $145.00 in cash and 0.8378 shares of CVS Health common stock.  Upon closing of the transaction, Aetna shareholders will own approximately 22% of the combined company and CVS Health shareholders will own approximately 78%.

The transaction is expected to close in the second half of 2018.  It is subject to approval by CVS Health and Aetna shareholders, regulatory approvals and other customary closing conditions.

**Financing of the Transaction**

CVS Health intends to fund the cash portion of the transaction through a combination of existing cash on hand and debt financing. The transaction is not contingent upon receipt of financing. Barclays, Goldman Sachs and Bank of America Merrill Lynch are providing $49 billion of financing commitments.

**Governance Details**

Upon the closing of the transaction, three of Aetna's directors, including Aetna's Chairman and CEO Mark T. Bertolini, will be added to the CVS Health Board of Directors. In addition, members of the Aetna management team will play significant roles in the newly combined company. Aetna will operate as a stand-alone business unit within the CVS Health enterprise and will be led by members of their current management team.

**Insiders' Interests in the Proposed Transaction**

46. CVS Health and Aetna insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Aetna.

47. Notably, according to the Registration Statement, defendant Bertolini and two additional Aetna directors will join the board of directors of CVS Health following consummation of the Proposed Transaction.

48. Moreover, Aetna insiders stand to reap substantial financial benefits for securing the deal with CVS Health. Each Aetna stock appreciation right will be converted into the right to receive cash and each Company restricted stock unit and performance stock unit subject to accelerated vesting, will vest and be converted into the right to receive the Merger Consideration. The following table summarizes the cash payments the Company's executive officers and directors stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

12

| | |
|---|---|
| Defendant Aguirre | $4,458,666 |
| Defendant Clark | $8,682,258 |
| Defendant Cohen | $28,669,000 |
| Defendant Coye | $4,958,532 |
| Defendant Farah | $12,237,587 |
| Defendant Garten | $7,593,286 |
| Defendant Hancock | $31,957,429 |
| Defendant Harrington | $10,044,398 |
| Defendant Ludwig | $11,914,632 |
| Defendant Newhouse | $17,028,730 |
| Defendant Snowe | $854,853 |

| | |
|---|---|
| Defendant Bertolini | $479,694,488 |
| Shawn m. Guertin | $20,226,755 |
| Gary W. Loveman | $22,486,945 |
| Karen S. Lynch | $38,181,591 |
| Thomas J. Sabatino, Jr., | $10,317,584 |
| Rick M. Jelinek | $23,419,424 |
| Meg McCarthy | $44,078,307 |
| Dr. Harold L. Paz | $14,653,877 |
| Fran S. Soistman | $29,049,956 |

49.    Further, if they are terminated in connection with the Proposed Transaction, Aetna's named executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| Name | Cash(1) | Equity(2) | Benefits(3) | Total |
|---|---|---|---|---|
| Mark T. Bertolini<br>    Chairman and Chief Executive Officer | $   6,720,000 | $   12,007,692 | $   3,815 | $   18,731,508 |
| Shawn M. Guertin,<br>    Executive Vice President, CFO and Chief<br>        Enterprise Risk Officer | 1,974,308 | 11,690,336 | 4,745 | 13,669,388 |
| Gary W. Loveman,<br>    Executive Vice President, Consumer Health<br>        and Services | 1,722,000 | 12,698,633 | 3,795 | 14,424,429 |
| Karen S. Lynch,<br>    President | 5,216,400 | 14,864,775 | 3,809 | 20,084,984 |
| Thomas J. Sabatino, Jr.<br>    Executive Vice President and General<br>        Counsel | 1,500,000 | 12,094,909 | 3,815 | 13,598,724 |

**The Registration Statement Contains Material Misstatements or Omissions**

50.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Aetna's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

51.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Aetna and CVS Health's financial projections, relied upon by Aetna's financial advisors, Lazard and Allen, in their financial analyses; and (ii) the valuation analyses prepared by Lazard and Allen in connection with the rendering of their fairness opinions.   Accordingly, Aetna stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Aetna's Financial Projections*

52.     First, the Registration Statement omits material information regarding the Company's and CVS Health's financial projections provided by Aetna's management and relied upon by Lazard and Allen for their analyses.

53.     For example, the Registration Statement states:

In connection with its opinion, Lazard . . . reviewed various financial forecasts and other data prepared by Aetna relating to the business of Aetna, financial forecasts and other data prepared by CVS Health and as extrapolated per Aetna relating to the business of CVS Health, *and the projected synergies and other benefits, including the amount and timing thereof, anticipated by the respective managements of Aetna and CVS Health to be realized from the merger. . . . At Aetna's direction, for purposes of Lazard's analysis, Lazard utilized the projected synergies and other benefits anticipated to be realized from the merger that were prepared by Aetna.*

14

Registration Statement at 111-12 (emphasis added).   The Registration Statement further sets
forth:

> In arriving at its opinion, Allen & Company, among other things … discussed
> with the managements of Aetna and CVS Health the strategic rationale for the
> merger and the *potential synergies expected by such managements to result from
> the merger, including the timing and amount of, costs to achieve, and capital
> expenditures associated with, such synergies*, which are, collectively, referred to
> in this section of this joint proxy statement/prospectus as the synergies, and
> certain potential pro forma financial effects of the merger. . . . With respect to the
> Aetna forecasts and the synergies that Allen & Company was directed to utilize
> for purposes of its analyses . . . .

*Id.* at 120 (emphasis added).   Yet, the Registration Statement fails to set forth the "projected

synergies and other benefits anticipated to be realized from the merger" (*id.* at 112) provided to

Lazard and the "potential synergies expected by such managements to result from the merger,

including the timing and amount of, costs to achieve, and capital expenditures associated with,

such synergies" (*id.* at 120) provided to Allen in connection with their respective analyses.[1]

54.     In addition, the Registration Statement fails to disclose a reconciliation of all non-

GAAP to GAAP metrics.   Specifically, with respect to Aetna management's financial

projections, the Registration Statement fails to disclose a reconciliation of adjusted revenue,

adjusted earnings, adjusted earnings per share ("EPS"), adjusted EBITDA, and unlevered free

cash flows ("UFCF").   With respect to CVS Health's financial projections, the Registration

---

[1] Although the Registration Statement discloses in the section entitled "Aetna's Reasons for the
Merger; Recommendation of the Aetna Board of Directors that Aetna Shareholders Approve and
Adopt the Merger Agreement" under the subheading *Strategic Factors* that "[t]he merger is
expected to create significant opportunities to increase the combined company's operating
efficiency by simplifying processes and projected  administrative and other cost synergies, which
Aetna believes could be $2.4 billion per year by the fifth full year following completion of the
merger . . . " (Registration Statement at 101-02), the Registration Statement fails to disclose
whether this information constituted the "projected synergies" provided to Lazard and Allen and
further fails to disclose the additional above-mentioned synergy-related information considered
by Lazard and Allen in connection with their analyses.

Statement fails to disclose a reconciliation of adjusted EBITDA, adjusted net income, adjusted EPS, and UFCF.  Similarly, with respect to the combined company's financial projections, the Registration Statement fails to disclose a reconciliation of net revenue, adjusted EBITDA, and adjusted net income.

55.    The omission of this material information renders the Registration Statement false and misleading, including, inter alia, the following sections of the Registration Statement: "Unaudited Prospective Financial Information" and "Opinions of Aetna's Financial Advisors."

***Material Omissions Concerning Lazard's and Allen's Financial Analyses***

56.    The Registration Statement describes Lazard's and Allen's fairness opinions and the various valuation analyses they performed in support of their opinions.  However, the description of Lazard's and Allen's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Aetna's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's and Allen's fairness opinions in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Aetna's stockholders.

57.    The Registration Statement indicates that Lazard performed two *Discounted Cash Flow ("DCF") Analyses* of Aetna; one using the perpetuity growth rate methodology, and the other using the exit multiple methodology.  With respect to each of these analyses, the Registration Statement fails to disclose (i) Aetna's stock-based compensation that was treated as a cash expense in the analyses; and (ii) the actual inputs and assumptions underlying the discount rate range of 7.0% to 8.0% selected and used by Lazard in its analyses.

16

58.     With respect to Lazard's perpetuity growth rate methodology *DCF Analysis* of Aetna, the Registration Statement fails to disclose (i) Lazard's basis for selecting perpetuity growth rates of 2.0% to 3.0%; and (ii) the terminal exit multiples implied from Lazard's analysis.

59.     With respect to Lazard's exit multiple methodology *DCF Analysis*, the Registration Statement fails to disclose (i) Aetna's estimated EBITDA for the fiscal year ending December 21, 2022, utilized in calculating the terminal value for Aetna;[2] (ii) the assumptions underlying Lazard's selection of the terminal multiple range of 10.0x to 11.0x; and (iii) the perpetuity growth rates implied from Lazard's analysis.

60.     With respect to Lazard's *Selected Public Companies Analysis* of Aetna, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Lazard in the analysis as well as Aetna's calendar year 2018 estimated EPS and EBITDA[3] utilized by Lazard in the analysis.

61.     With respect to Lazard's *Selected Precedent Transactions Analysis* of Aetna, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Lazard in the analysis as well as Aetna's calendar year 2017 estimated EBITDA[4] utilized by Lazard in the analysis.

62.     With respect to Lazard's *DCF Analysis* of CVS Health, the Registration Statement fails to disclose (i) CVS Health's stock-based compensation that was treated as a cash expense in the analysis; (ii) CVS Health's estimated EBITDA for the fiscal year ending

---

[2] Aetna's 2022 *adjusted* EBITDA is disclosed on page 156 of the Registration Statement.
[3] Aetna's 2018 *adjusted* EPS and *adjusted* EBITDA are disclosed on pages 155 and 156 of the Registration Statement, respectively.
[4] Aetna's 2017 *adjusted* EBITDA is disclosed on page 156 of the Registration Statement.

December 21, 2022, utilized in calculating the terminal value for CVS Health;[5] (iii) the inputs

and assumptions underlying the discount rate range of 6.0% to 7.0% selected and used by Lazard

in its analyses; (iv) the assumptions underlying Lazard's selection of the terminal multiple range

of 9.0x to 10.0x; and (v) the perpetuity growth rates implied from Lazard's analysis.

63.     With respect to Lazard's *Selected Public Companies Analysis* of CVS Health,

the Registration Statement fails to disclose the individual multiples and financial metrics for the

companies observed by Lazard in the analysis as well as CVS Health's calendar year 2018

estimated EPS and EBITDA[6] utilized by Lazard in the analysis.

64.     With respect to Allen's *DCF Analysis* of Aetna, the Registration Statement fails

to disclose (i) Aetna's stock-based compensation that was treated as a cash expense in the

analysis; (ii) Allen's basis for selecting perpetuity growth rates of 2.0% to 3.0%; (iii) the inputs

and assumptions underlying the discount rate range of 7.0% to 8.5% selected and used by Allen

in its analyses; and (iv) the terminal exit multiples implied from Allen's analysis.

65.     With respect to Allen's *Selected Public Companies Analysis* of Aetna, the

Registration Statement fails to disclose the individual multiples and financial metrics for the

companies observed by Allen in the analysis as well as Aetna's calendar year 2018 estimated

EPS and EBITDA[7] utilized by Allen in the analysis.

66.      With respect to Allen's *Selected Precedent Transactions Analysis* of Aetna, the

Registration Statement fails to disclose the individual multiples and financial metrics for the

---

[5] CVS Health's 2022 *adjusted* EBITDA is disclosed on page 159 of the Registration Statement.
[6] CVS Health's 2018 *adjusted* EPS and *adjusted* EBITDA are disclosed on page 159 of the Registration Statement.
[7] Aetna's 2018 *adjusted* EPS and *adjusted* EBITDA are disclosed on pages 155 and 156 of the Registration Statement, respectively.

transactions observed by Allen in the analysis as well as Aetna's calendar year 2018 estimated EBITDA[8] utilized by Allen in the analysis.

67.     With respect to Allen's *DCF Analysis* of CVS Health, the Registration Statement fails to disclose (i) CVS Health's stock-based compensation that was treated as a cash expense in the analysis; (ii) Allen's basis for selecting perpetuity growth rates of 1.0% to 1.5%; (iii) the inputs and assumptions underlying the discount rate range of 6.0% to 7.5% selected and used by Lazard in its analyses; and (iv) the terminal exit multiples implied from Lazard's analysis.

68.     With respect to Allen's *Selected Public Companies Analysis* of CVS Health, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Lazard in the analysis as well as CVS Health's calendar year 2018 estimated EPS and EBITDA[9] utilized by Allen in the analysis.

69.     The omission of this information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: "Opinions of Aetna's Financial Advisors" and "Unaudited Prospective Financial Information."

70.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with

---

[8] Aetna's 2017 *adjusted* EBITDA is disclosed on page 156 of the Registration Statement.
[9] CVS Health's 2018 *adjusted* EPS and *adjusted* EBITDA are disclosed on page 159 of the Registration Statement.

the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

71.     Plaintiff repeats all previous allegations as if set forth in full.

72.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

73.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  The Registration Statement misrepresented and/or omitted material facts, including material information about the value of the combined company and the financial analyses performed by the Company's financial advisors.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

74.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the

Registration Statement and in other information reasonably available to stockholders.

75.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

76.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

77.     Plaintiff repeats all previous allegations as if set forth in full.

78.     The Individual Defendants acted as controlling persons of Aetna within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Aetna and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

79.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory

21

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of this document.

81.   In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

82.   By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83.   Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Aetna, and against defendants, as follows:

A.   Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction

and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Aetna stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 5, 2018

By:  /s/ *Shannon L. Hopkins*
     Shannon L. Hopkins
     LEVI & KORSINSKY LLP
     733 Summer Street, Suite 304
     Stamford, CT 06901
     Tel: (203) 992-4523
     Fax: (212) 363-7171
     shopkins@zlk.com

**OF COUNSEL:**

**WEISSLAW LLP**                              *Attorneys for Plaintiff*
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
Alexandra E. Eisig
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

23

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1.     I have reviewed the complaint in this matter against Aetna, Inc. ("Aetna") and others and authorized the filing thereof.

2.     I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in any private action.

3.     I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     My transactions in Aetna securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

5.     I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):

*Joel Rosenfeld v. YuMe, Inc., et al.*, No. 3:18-cv-00194 (N.D. Cal.); *Rosenfeld v. Ruby Tuesday, Inc. et al.*, No. 17-cv-00485-HSM-CCS (E.D. Tenn.); *Rosenfeld v. Kate Spade & Co.*, No. 17-cv-04085-RMB (S.D.N.Y.); *Rosenfeld IRA v. Cynosure, Inc. et al.*, No. 17-cv-10309-DJC (D. Mass.).

6.     I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

Dated:  January 31, 2018

_____
Joel Rosenfeld

| Transaction (Purchase or Sale) | Trade Date | Quantity | Price per Share |
|---|---|---|---|
| Purchase | November 30, 2017 | 50 | $181.1799 |
| | | | |
| | | | |
| | | | |
| | | | |